# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ALABAMA
### SOUTHERN DIVISION

| | |
|---|---|
| AAL USA, INC., | ) |
| Plaintiff, | ) |
| v. | ) Case No. 2:16-cv-02090-KOB |
| BLACK HALL AEROSPACE, INC., et al., | ) This Document Relates Only to Case 2:17-cv-00399-KOB |
| Defendants. | ) |

## MEMORANDUM OPINION

This matter is before the court on Defendants' joint motion to dismiss the complaint in *AAL Group Ltd. v. Black Hall Aerospace Inc.*, 2:17-cv-00399-KOB, which is one of two consolidated cases. (Doc. 6). The consolidated cases arise primarily from an Asset Purchase Agreement that AAL USA entered into with one of the Defendants in this case, Black Hall Aerospace.

Each of the consolidated cases takes a slightly different tack regarding the legal import of the Asset Purchase Agreement. In this case, AAL *Group*—a separate entity from AAL USA—asserts that, if the Asset Purchase Agreement were valid, then (1) Black Hall Aerospace is liable for breach of contract, and (2) Black Hall and two of its executives are liable for unjust enrichment.[1] In the other case, AAL *USA* contends that the Asset Purchase Agreement is invalid and was part of a conspiracy among some of its top executives to have Black Hall Aerospace take over AAL USA.

---

[1] AAL Group's complaint refers to unjust enrichment *and* money had and received in the same count. (Doc. 1 at 13). Under Alabama law, which is the controlling law in this case, unjust enrichment and money had and received are the same cause of action. *See Dickinson v. Cosmos Broadcasting Co.*, 782 So. 2d 260, 266 (Ala. 2000). As a result, the court will refer only to unjust enrichment when discussing those claims.

In this case, AAL Group alleges that it entered five contracts with AAL USA. After AAL Group performed its obligations under the five contracts, AAL USA and Black Hall Aerospace entered into the Asset Purchase Agreement in which AAL USA transferred to Black Hall Aerospace all of its assets and some of its liabilities. AAL Group contends that under the Asset Purchase Agreement, Black Hall Aerospace assumed the liabilities under the five contracts but has not satisfied them. AAL Group, therefore, raises a breach of contract claim against Black Hall Aerospace.

AAL Group also brings an unjust enrichment claim against Black Hall Aerospace and two of its officers, Paul Daigle and Keith Woolford. Mr. Daigle used to be the Chief Executive Officer of AAL USA, and is now the CEO of Black Hall Aerospace; Mr. Woolford used to be the Chief Financial Officer of AAL USA, and is now the CFO of Black Hall Aerospace.[2] According to AAL Group, while Mr. Daigle and Mr. Woolford were officers of AAL USA, they diverted money that AAL USA owed to AAL Group and spent it on Black Hall Aerospace and themselves.

The court WILL GRANT IN PART AND DENY IN PART the motion to dismiss. First, the court declines to dismiss the complaint based on hypothetical pleading because Federal Rule of Civil Procedure 8(d) permits hypothetical pleading. Second, the court declines to dismiss the complaint based on judicial estoppel because, at this stage in the proceedings, the court cannot conclude that AAL Group and AAL USA are in fact one party taking inconsistent positions in different cases.

---

[2] From other filings made in these consolidated cases, the court gathers that Black Hall Aerospace no longer employs Mr. Woolford. However, in ruling on a motion to dismiss, the court must accept as true the allegations made in the complaint. *Butler v. Sheriff of Palm Beach Cty.*, 685 F.3d 1261, 1265 (11th Cir. 2012). For that reason, the court will continue to refer to Mr. Woolford as the CFO of Black Hall Aerospace.

Assuming the Asset Purchase Agreement is valid, it expressly provides that Black Hall Aerospace is not liable for any of AAL USA's obligations that arose before the execution of the Agreement. AAL USA's obligations under one of the contracts at issue arose before the execution of the Agreement, so the court WILL DISMISS WITH PREJUDICE the claim that Black Hall Aerospace breached that contract. The complaint does not state when AAL USA's obligations under two of the other contracts arose, so the court WILL DISMISS WITHOUT PREJUDICE the claim that Black Hall Aerospace breached those contracts.

The court WILL DENY Defendants' motion to dismiss the unjust enrichment claim against Black Hall Aerospace because Alabama law does not bar AAL Group from pleading unjust enrichment as an alternative to a breach of contract claim. The court WILL GRANT Defendants' motion to dismiss the unjust enrichment claim against Mr. Daigle and Mr. Woolford because AAL Group failed to plead the facts underlying the claim with the particularity required by Federal Rule of Civil Procedure 9(b). The court WILL DISMISS WITHOUT PREJUDICE the unjust enrichment claim against Mr. Daigle and Mr. Woolford.

**I.  BACKGROUND**

At this stage, the court must accept as true the allegations in the complaint and construe them in the light most favorable to the plaintiff. *Butler v. Sheriff of Palm Beach Cty.*, 685 F.3d 1261, 1265 (11th Cir. 2012). "A court's review on a motion to dismiss is limited to the four corners of the complaint. A court may consider only the complaint itself and any documents referred to in the complaint which are central to the claims." *Wilchombe v. TeeVee Toons, Inc.*, 555 F.3d 949, 959 (11th Cir. 2009) (citation and quotation marks omitted).

AAL Group is a contractor that provides aviation services to governments and prime contractors. (Doc. 1 at 3). In 2011 it created a subsidiary, the similarly-named AAL USA, to

support some of its contracts. (*Id.*). In early 2014, AAL Group and AAL USA became independent companies, but they continued to work together on various contracts. (*Id.*). For some unspecified period of time, Mr. Daigle was the CEO of AAL USA and Mr. Woolford was its CFO. (*Id.* at 4).

**1. The Contracts**

Relevant to this case are five contracts that AAL Group entered into with AAL USA between 2011 and 2016. Those contracts are: (1) the KN53 Aviation Equipment contract; (2) the Northrop Grumman contract; (3) the Airbus Iraqi MILDS® contract; (4) the F2AAST Certified Logistics Support contract; and (5) the MAG DS Helicopter contract. (Doc. 1 at 6–12).

*a. The KN53 Aviation Equipment Contract*

In October 2011, AAL Group contracted with AAL USA to supply and deliver certain aviation equipment. (*Id.* at 11). At some point—the complaint does not give a specific date—AAL Group made an advance payment of $77,012.50, but AAL USA never delivered the equipment. (*Id.*).

*b. The Northrop Grumman Contract*

Between April 2014 and February 2015, AAL USA entered into several purchase orders to provide technical maintenance of helicopters for Northrop Grumman. (*Id.* at 6). AAL USA subcontracted work under three of those purchase orders to AAL Group. (*Id.* at 6–7). AAL Group performed its obligations under two of the purchase orders in January 2015, so AAL USA owed AAL Group $2,834,706.07. (Doc. 1 at 6–7; Doc. 1-10; Doc. 1-11). AAL Group completed work under another purchase order in February 2015, so AAL USA owed AAL Group $745,551.13 for that work. (Doc. 1 at 7). In total, by February 2015, AAL USA owed AAL Group $3,580,257.20 for AAL Group's work on the two purchase orders. (*Id.* at 6–7).

AAL USA, instead of collecting the money Northrop Grumman owed it, "factored" its accounts receivable. (*Id.* at 8). In other words, AAL USA sold its accounts receivable to another company at a discount in exchange for a lump sum payment. (*Id.* at 8 n.3). It factored at least $2,922,490.56 of Northrop Grumman receivables. (*Id.* at 8). The date on which AAL USA sold its receivables is not clear, but in March 2015, AAL USA's CFO, Mr. Woolford, sent Northrop Grumman a letter informing it that AAL USA and the factoring company had entered into a factoring agreement and instructing Northrop Grumman to pay all invoices directly to the factoring company. (Doc. 1-12).

AAL USA never paid AAL Group for the work that AAL Group did under the three purchase orders. (Doc. 1 at 8). AAL USA's CEO, Mr. Daigle, misrepresented to AAL Group that Northrop Grumman had not paid for the work performed. (*Id.*). Instead, Mr. Daigle and Mr. Woolford "spent the money in some other way, leaving AAL Group without proper compensation under the Northrop contract." (*Id.*). AAL Group alleges that Mr. Daigle and Mr. Woolford "kept the money for their personal benefit and use as well as for the use of [Black Hall Aerospace]." (*Id.*).

    c. *The Airbus Iraqi Contract*

In June 2015, AAL USA entered another contract with AAL Group, under which AAL USA was to supply and deliver aviation equipment to AAL Group. (Doc. 1 at 9). AAL Group made an advance payment of $362,316.03, but it has not received any of the equipment. (*Id.*).

    d. *The F2AAST Certified Logistics Support Contract*

In September 2015 and September 2016, AAL Group entered into two purchase orders with AAL USA to provide labor and travel services. (Doc. 1 at 9–10). At some point, AAL

Group performed its obligations under the purchase orders, so AAL USA owes it $418,884.65. (*Id.* at 10). But AAL USA has not paid the money it owes. (*Id.*).

    *e. The MAG DS Helicopter Contract*

In January 2016, AAL USA contracted with AAL Group to lease to AAL USA a helicopter and to provide training, certification support, licenses, safety inspections, and maintenance services. (Doc. 1 at 10). By October 2016, AAL USA owed AAL Group $223,000 under that contract, but AAL USA never paid that money. (*Id.* at 11).

  **2. The Asset Purchase Agreement**

In June 2015, Black Hall Aerospace was incorporated. (Doc. 1 at 3). AAL USA's CEO, Mr. Daigle, and CFO, Mr. Woolford, own shares of Black Hall Aerospace. (*Id.*). Mr. Daigle is Black Hall Aerospace's CEO and, apparently, its President. (Doc. 1 at 4; Doc. 1-2 at 9). Mr. Woolford is Black Hall Aerospace's CFO. (Doc. 1 at 4–5).

On September 29, 2016, AAL USA and Black Hall Aerospace entered into the Asset Purchase Agreement, which AAL Group attached to its complaint. (*Id.* at 4; Doc. 1-2). AAL Group states that, according to AAL USA, Mr. Daigle and Mr. Woolford fraudulently induced AAL USA into entering the Asset Purchase Agreement and selling its assets for a fraction of the company's worth. (Doc. 1 at 4–5).

Because the Asset Purchase Agreement is attached to the complaint, the court can consider it at the motion to dismiss stage. *Hoefling v. City of Miami*, 811 F.3d 1271, 1277 (11th Cir. 2016). Section 1.01 of the Agreement provides:

> Subject to the terms and conditions set forth herein, [AAL USA] shall sell, assign, transfer, convey and deliver to [Black Hall Aerospace], and [Black Hall Aerospace] shall purchase from [AAL USA], free and clear of any mortgage, pledge, lien, charge, security interest, claim or other encumbrance . . . all of [AAL USA]'s right, title and interest in all of the assets, properties and rights of every kind and nature, whether real, personal or mixed, tangible or intangible (including

goodwill), wherever located and whether now existing or hereafter acquired . . . (collectively, the "**Purchased Assets**"), including, without limitation, the following:

. . . .

(b) all contracts of any kind whatsoever . . . .

(Doc. 1-2 at 3).

Section 1.03 of the Agreement further provides:

[Black Hall Aerospace] shall assume and agree to pay, perform and discharge the liabilities and obligations arising after the Closing . . . under the Purchased Assets, but only to the extent that such liabilities and obligations do not related [sic] to any breach, default or violation by [AAL USA] on or prior to the Closing (collectively, the "**Assumed Liabilities**"). Other than the Assumed Liabilities, [Black Hall Aerospace] shall not assume any liabilities or obligations of [AAL USA] of any kind, whether known or unknown, contingent, matured or otherwise, whether currently existing or hereinafter created.

(*Id.* at 3–4). The Asset Purchase Agreement defines the Closing as "the execution of this Agreement," (*id.* at 4), which was September 29, 2016, (*id.* at 2).

The Asset Purchase Agreement requires AAL USA and Black Hall Aerospace to enter an Assignment and Assumption Agreement. (*Id.* at 4). The Assignment and Assumption Agreement provides:

[AAL USA] hereby sells, assigns, grants, conveys and transfers to [Black Hall Aerospace] all of [AAL USA]'s right, title and interest in and to the Assigned Contracts. [Black Hall Aerospace] hereby accepts such assignment and assumes all of [AAL USA]'s duties and obligations under the Assigned Contracts and agrees to pay, perform and discharge, as and when due, all of the obligations of [AAL USA] under the Assigned Contracts accruing on and after the Effective Date.

(Doc. 1-3 at 2). The Assignment and Assumption Agreement states that the Effective Date is September 29, 2016: the same date as the Closing of the Asset Purchase Agreement. (*Id.*; Doc. 1-2 at 2, 4).

7

Finally, AAL USA attached to its complaint a schedule of the assigned contracts. (Doc. 1-6). AAL USA states that the five contracts at issue in this case are listed on the schedule. (Doc. 1 at 6–7, 9–11). The schedule lists seven contracts, two of which are between AAL USA and a company other than AAL Group. (Doc. 1-6 at 2). The remaining five contracts are between AAL Group and AAL USA, but they do not bear the same names as the contracts in AAL Group's complaint. Nevertheless, because this matter is before the court on a motion to dismiss, the court will construe the facts in AAL Group's favor and, taken in the light most favorable to AAL Group, assume that the five contracts listed in the schedule are the five contracts at issue in the complaint.

AAL Group asserts one count of breach of contract against Black Hall Aerospace for breach of the five contracts, and one count of unjust enrichment against Black Hall Aerospace, Mr. Daigle, and Mr. Woolford, for their "actions described in this Complaint." (Doc. 1 at 12–13).

## II. DISCUSSION

Federal Rule of Civil Procedure 8(a) requires "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). A Rule 12(b)(6) motion to dismiss attacks the legal sufficiency of the complaint. "To survive a motion to dismiss, the plaintiff must plead 'a claim to relief that is plausible on its face.'" *Butler*, 685 F.3d at 1265 (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)).

The parties agree that Alabama law governs the breach of contract and unjust enrichment claims raised in AAL Group's complaint. Under Alabama law, "[t]he elements of a breach-of-contract claim . . . are (1) a valid contract binding the parties; (2) the plaintiffs' performance under the contract; (3) the defendant's nonperformance; and (4) resulting damages." *Reynolds*

*Metals Co. v. Hill*, 825 So. 2d 100, 105 (Ala. 2002). And "[t]o prevail on a claim of unjust enrichment under Alabama law, a plaintiff must show that: (1) the defendant knowingly accepted and retained a benefit, (2) provided by another, (3) who has a reasonable expectation of compensation." *Matador Holdings, Inc. v. HoPo Realty Investments, LLC*, 77 So. 3d 139, 145 (Ala. 2011) (quoting *Portofino Seaport Vill., LLC v. Welch*, 4 So. 3d 1095, 1098 (Ala. 2008)).

**1. Breach of Contract**

AAL Group alleges that Black Hall Aerospace breached the five contracts described above. (Doc. 1 at 12–13). Black Hall Aerospace moves to dismiss that claim, contending that (1) AAL Group's hypothetical pleading about the validity of the Asset Purchase Agreement is inadequate to state a breach of contract claim; (2) judicial estoppel bars the claim; and (3) in any event, Black Hall Aerospace could not be liable on three of the five contracts because in those three contracts, AAL USA's contractual obligations arose before the Closing Date, which was September 29, 2016. (Doc. 7 at 13–24).

*a. Hypothetical Pleading*

First is Black Hall Aerospace's argument that AAL Group's hypothetical pleading about the validity of the Asset Purchase Agreement is inadequate to state a claim. Black Hall Aerospace correctly points out that AAL Group's complaint does not allege that the Asset Purchase Agreement is valid; instead, it alleges that *Black Hall Aerospace* claims the Asset Purchase Agreement is valid and *AAL USA* claims the Asset Purchase Agreement is invalid. (Doc. 7 at 14–15). AAL Group responds that the validity of the Asset Purchase Agreement is irrelevant because it seeks damages for only breach of the five contracts between AAL Group and AAL USA, not for breach of the Asset Purchase Agreement. (Doc. 20 at 12). Yet it

9

acknowledges that it must "plead facts that show the Assigned Contracts transferred to [Black Hall Aerospace]." (*Id.* at 13).

Black Hall Aerospace was not a party to the contracts between AAL Group and AAL USA. Thus, the only way that Black Hall Aerospace could be liable for breach of those contracts is if it assumed the liabilities of one of the parties to the contract. *See Reynolds Metals Co.*, 825 So. 2d at 105 (requiring, as an element of a breach of contract claim, "a valid contract *binding the parties*"). And, under the facts as pleaded by AAL Group, the only way that Black Hall Aerospace could have assumed any of AAL USA's liabilities is under the Asset Purchase Agreement. Thus, the complaint's failure to affirmatively allege that the Asset Purchase Agreement is valid is effectively a failure to allege that Black Hall Aerospace is liable under any of the five contracts. Without that factual allegation, Black Hall Aerospace is essentially a stranger to the five contracts, and cannot be held liable for breaching them.

But Federal Rule of Civil Procedure 8(d) provides that "[a] party may set out 2 or more statements of a claim or defense alternatively *or hypothetically*, either in a single count or defense or in separate ones. If a party makes alternative statements, the pleading is sufficient if *any one of them is sufficient*." Fed. R. Civ. P. 8(d) (emphases added). AAL Group's recitation of the facts amounts to a hypothetical allegation that *if* the APA is valid, Black Hall Aerospace assumed the five contracts that AAL USA had entered into with AAL Group. Assuming no other barriers to AAL Group's breach of contract claims exist, then if AAL Group could prove the validity of the Asset Purchase Agreement, it could prevail on its breach of contract claim against Black Hall Aerospace. Thus, its hypothetical allegation is sufficient. *See id.* The court will not dismiss AAL Group's complaint for resting on a hypothetical allegation.

*b. Judicial Estoppel*

Next is Black Hall Aerospace's assertion that judicial estoppel bars AAL Group's complaint. Under Alabama law,

> For judicial estoppel to apply, (1) a party's later position must be clearly inconsistent with its earlier position; (2) the party must have been successful in the prior proceeding so that judicial acceptance of an inconsistent position in a later proceeding would create the perception that either the first or second court was misled; and (3) the party seeking to assert an inconsistent position must derive an unfair advantage or impose an unfair detriment on the opposing party if not estopped.

*Greene v. Jefferson Cty. Comm'n*, 13 So. 3d 901, 914 (Ala. 2008) (quotation marks and citations omitted).

To understand Defendants' judicial estoppel argument, the court must briefly discuss the other case that is consolidated with this one. In the other case, *AAL USA v. Black Hall Aerospace*, 2:16-cv-02090-KOB, AAL USA sued Mr. Daigle, Mr. Woolford, and a plethora of other individuals and businesses associated with them and with Black Hall Aerospace.[3] Like this case, the *AAL USA* case revolves around the Asset Purchase Agreement. AAL USA alleges that the defendants in that case—Mr. Daigle and Mr. Woolford among them—"engineered a fraudulent looting of AAL [USA], transferring away its resources, spending hundreds of thousands of dollars on personal expenses, lying . . . about the ownership of [Black Hall Aerospace], attempting to convince its employees to leave AAL [USA] and come to work at [Black Hall Aerospace], and attempting to usurp AAL [USA]'s relationships and contracts." (Doc. 96 in 2:16-cv-2090-KOB, at 3). Among AAL USA's other allegations against the defendants in that case, it asserts they deceived AAL USA's president into signing the Asset Purchase Agreement. (*Id.* at 22).

---

[3] In the other case, AAL USA initially named Black Hall Aerospace as a defendant, but it has since dismissed Black Hall Aerospace.

At this stage, the court finds that judicial estoppel does not bar AAL Group's lawsuit. First of all, the court must accept AAL Group's allegation that it and AAL USA are different parties. As such, even if AAL USA's allegations contradict AAL Group's allegations, AAL Group cannot be bound by allegations that AAL USA made in a separate lawsuit. Second, AAL USA has not yet been successful in a prior proceeding. Its case is pending before this court, just as AAL Group's case is pending. For those reasons, the court will not dismiss AAL Group's complaint based on judicial estoppel.

    *c. Assumption of Liabilities*

Black Hall Aerospace's final argument is that even assuming the Asset Purchase Agreement is valid, it is not liable on the Northrop Grumman, KN53, and Airbus Iraqi contracts because the Asset Purchase Agreement provides that Black Hall Aerospace assumed only liabilities arising after September 29, 2016, the Closing of the Asset Purchase Agreement and the Effective Date of the Assignment and Assumption Agreement. (Doc. 7 at 22–24). The court agrees.

Section 1.01 of the Asset Purchase Agreement provides that Black Hall Aerospace will purchase all of AAL USA's contracts. (Doc. 1-2 at 3). But Section 1.03 expressly provides:

> [Black Hall Aerospace] shall assume and agree to pay, perform and discharge the liabilities and obligations arising after the Closing . . . under the Purchased Assets, but only to the extent that such liabilities and obligations do not related [sic] to any breach, default or violation by [AAL USA] on or prior to the Closing (collectively, the "**Assumed Liabilities**"). Other than the Assumed Liabilities, [Black Hall Aerospace] shall not assume any liabilities or obligations of [AAL USA] of any kind, whether known or unknown, contingent, matured or otherwise, whether currently existing or hereinafter created.

(*Id.* at 3–4). Furthermore, the Assignment and Assumption Agreement that AAL USA and Black Hall Aerospace entered also provides that Black Hall Aerospace assumes "all of [AAL USA]'s duties and obligations under the Assigned Contracts and agrees to pay, perform and

12

discharge, as and when due, all of the obligations of [AAL USA] under the Assigned Contracts *accruing on and after the Effective Date*." (Doc. 1-3 at 2) (emphasis omitted). The Effective Date and the Closing date are the same: September 29, 2016. (Doc. 1-2 at 2, 4).

Under the plain language of the Asset Purchase Agreement and the Assignment and Assumption Agreement, Black Hall Aerospace assumed *only* the liabilities arising after September 29, 2016. Black Hall Aerospace contends that AAL USA's liabilities under three of the five contracts at issue in this case arose before that date: the Northrop Grumman contract, the KN53 contract, and the Airbus Iraqi contract. (Doc. 7 at 22–24).

According to AAL Group's complaint and the attachments to it, AAL Group completed its performance under the Northrop Grumman purchase orders in January 2015 and February 2015, well before September 29, 2016. (*See* Doc. 1 at 6–7; Doc. 1-10; Doc. 1-11). Thus, Black Hall Aerospace did not assume AAL USA's liabilities under those purchase orders. This court WILL DISMISS WITH PREJUDICE the claim that Black Hall Aerospace is liable for AAL USA's breach of the Northrop Grumman contract.

AAL Group's complaint does not state when AAL USA's obligations under the KN53 and the Airbus Iraqi contracts arose. (*See* Doc. 1 at 9, 11). AAL Group and AAL USA entered into the KN53 contract in October 2011 and AAL Group made an advance payment to AAL USA at an unspecified date after that. (*Id.* at 11). Similarly, AAL Group and AAL USA entered into the Airbus Iraqi contract in June 2015 and AAL Group made an advance payment to AAL USA at an unspecified date after that. (*Id.* at 9). But neither the complaint nor AAL Group's attachments to the complaint indicate whether those advance payments occurred after September 29, 2016. As a result, AAL Group has not stated a claim for breach of the KN53 and Airbus Iraqi contracts.

Because AAL Group may be able to amend its complaint to provide the missing dates, the court WILL DISMISS WITHOUT PREJUDICE the claims that Black Hall Aerospace breached the KN53 and Airbus Iraqi contracts.

### 2. Unjust Enrichment

Defendants contend that AAL Group cannot state an unjust enrichment claim against Black Hall Aerospace because under Alabama law, an unjust enrichment claim cannot survive where the plaintiff has also asserted a breach of contract claim. (Doc. 7 at 24–26). Defendants also contend that AAL Group cannot state an unjust enrichment claim against Mr. Daigle and Mr. Woolford because (1) AAL Group fails to allege that it had a reasonable expectation of compensation from the individual defendants or that the individual defendants obtained a benefit in their individual capacities; (2) the claim is time-barred as to the Northrop Grumman and KN53 contracts; and (3) AAL Group did not plead the claim with the particularity required by Federal Rule of Civil Procedure 9(b). (*Id.* at 26–29).

"To prevail on a claim of unjust enrichment under Alabama law, a plaintiff must show that: (1) the defendant knowingly accepted and retained a benefit, (2) provided by another, (3) who has a reasonable expectation of compensation." *Matador Holdings, Inc.*, 77 So. 3d at 145. The Alabama Supreme Court has explained that

> The retention of a benefit is unjust if (1) the donor of the benefit acted under a mistake of fact or in misreliance on a right or duty, *or* (2) the recipient of the benefit engaged in some unconscionable conduct, such as fraud, coercion, or abuse of a confidential relationship. In the absence of mistake or misreliance by the donor or wrongful conduct by the recipient, the recipient may have been enriched, but he is not deemed to have been unjustly enriched.

*Mantiply v. Mantiply*, 951 So. 2d 638, 654–55 (Ala. 2006) (quotation marks and alteration omitted) (emphasis added).

*a. Black Hall Aerospace*

Under Alabama law, a party cannot *recover* for both breach of contract and unjust enrichment when the claims are based on the same set of facts. *Blackmon v. Renasant Bank*, 232 So. 3d 224, 228 n.4 (Ala. 2017) ("We also note that Renasant Bank's unjust-enrichment claim . . . and its breach-of-contract claim . . . , which are based on the same facts and contract, are mutually exclusive."); *Univalor Trust, S.A. v. Columbia Petroleum, LLC*, 315 F.R.D. 374, 382 (S.D. Ala. 2016) ("[T]he existence of an express contract extinguishes an unjust enrichment claim altogether because unjust enrichment is an equitable remedy which issues only where there is no adequate remedy at law.").

But Alabama law does not appear to bar a party from *pleading* breach of contract *and* unjust enrichment in the alternative. *See Blackmon*, 232 So. 3d at 228 n.4 (citing with approval *Harrell v. Colonial Holdings, Inc.*, 923 F. Supp. 2d 813, 826–27 (E.D. Va. 2013) and explaining that the court in *Harrell* "not[ed] that breach of contract and unjust enrichment are alternative theories of recovery"). The court will not dismiss the unjust enrichment claim against Black Hall Aerospace merely because AAL Group has also pleaded a breach of contract claim.

*b. Mr. Woolford and Mr. Daigle*

Defendants contend that AAL Group's unjust enrichment claim against Mr. Woolford and Mr. Daigle is due to be dismissed for three reasons: (1) failure to state a claim; (2) untimeliness; and (3) failure to plead with particularity. (Doc. 7 at 26–33). Because the court agrees that AAL Group did not plead this claim with the required particularity, the court will not address the first two grounds.

The complaint's allegations about Mr. Woolford's and Mr. Daigle's conduct relate only to the Northrop Grumman purchase orders. Specifically, the complaint alleges that AAL Group

15

performed its obligations under two purchase orders in January 2015 and its obligations under another purchase order in February 2015, and that by March 2015, AAL USA had entered a factoring agreement with a factoring company, under which AAL USA sold its accounts receivable—including those from Northrop Grumman—at a discount in exchange for a lump sum payment. (Doc. 1 at 7–8). The complaint does not state when AAL USA factored its accounts receivable from Northrop Grumman, but it does state that at some point, Mr. Daigle misrepresented to AAL Group that AAL USA had not paid AAL Group because Northrop Grumman had not paid AAL USA. (*Id.* at 8). The complaint alleges that Mr. Woolford and Mr. Daigle took the money that AAL USA owed AAL Group and "spent [it] in some other way . . . . for their personal benefit and use as well as for the use of [Black Hall Aerospace]." (Doc. 1 at 8).

Defendants contend that because AAL Group's unjust enrichment claim is based on fraudulent misrepresentations, AAL Group needed to plead it with particularity under Rule 9(b). Rule 9(b) provides that "[i]n alleging fraud or mistake, a party must state with particularity the circumstances constituting fraud or mistake." Fed. R. Civ. P. 9(b). "It appears to be the rule that a claim for unjust enrichment is subject to Rule 9(b) only if it is premised on fraud." *United States v. Gericare Med. Supply Inc.*, 2000 WL 33156443, at *10 (S.D. Ala. Dec. 11, 2000); *see also Space Coast Credit Union v. Merrill Lynch, Pierce, Fenner & Smith Inc.,* 295 F.R.D. 540, 545 (S.D. Fla. 2013) ("All of the claims for relief—even those that do not require proof of fraudulent intent—are based on alleged fraudulent representations and omissions . . . . Therefore, Rule 9(b) and the policies supporting it require [plaintiff] to plead these claimed fraudulent acts with particularity."); *U.S. ex rel. Citizens United to Reduce & Block Fed. Fraud, Inc. v. Metro. Med. Ctr.*, 1990 WL 10519617, at *3 (S.D. Fla. Jan. 11, 1990) ("[S]ince the unjust

enrichment claim set forth in Count IV rests on fraudulent taking of money, in connection with the fraud alleged in Counts I and II, it too must satisfy Rule 9(b).").

"Particularity means that a plaintiff must plead facts as to time, place, and substance of the defendant's alleged fraud, specifically the details of the defendant['s] allegedly fraudulent acts, when they occurred, and who engaged in them." *U.S. ex rel. Atkins v. McInteer*, 470 F.3d 1350, 1357 (11th Cir. 2006). In other words,

> Rule 9(b) is satisfied if the complaint sets forth (1) precisely what statements were made in what documents or oral representations or what omissions were made, and (2) the time and place of each such statement and the person responsible for making (or, in the case of omissions, not making) same, and (3) the content of such statements and the manner in which they misled the plaintiff, and (4) what the defendants obtained as a consequence of the fraud.

*Mizzaro v. Home Depot, Inc.*, 544 F.3d 1230, 1237 (11th Cir. 2008) (quotation marks omitted).

The court finds that AAL Group has not pled its unjust enrichment claim with particularity. Although the complaint sets out what Defendants obtained as a consequence of the alleged misrepresentations, it fails to meet the other requirements for pleading with particularity. With respect to Mr. Daigle, the only precise statement set out in the complaint is that he misrepresented to AAL Group that AAL USA had not paid it because Northrop Grumman had not yet paid AAL USA. But the complaint does not set out the time and place of that statement. And as to Mr. Woolford, the complaint does not set out any representations he made to AAL Group, much less the time and place of any such representation or how that specific statement misled AAL Group.

As a result, the court WILL DISMISS WITHOUT PREJUDICE the unjust enrichment claim against Mr. Daigle and Mr. Woolford.

## III. CONCLUSION

The court WILL GRANT IN PART AND DENY IN PART Defendants' motion to dismiss the complaint. The court WILL DISMISS WITH PREJUDICE the claim that Black Hall Aerospace breached the Northrop Grumman purchase orders and WILL DISMISS WITHOUT PREJUDICE the claim that Black Hall Aerospace breached the KN53 and the Airbus Iraqi contracts. But the court WILL NOT DISMISS the claim that Black Hall Aerospace breached the F2AAST and the MAG DS Helicopter contracts.

The court WILL DISMISS WITHOUT PREJUDICE the unjust enrichment claim against Mr. Daigle and Mr. Woolford. But the court WILL NOT DISMISS the unjust enrichment claim against Black Hall Aerospace.

The court will enter a separate order consistent with this opinion.

**DONE** and **ORDERED** this 5th day of March, 2018.

_[signature]_
**KARON OWEN BOWDRE**
CHIEF UNITED STATES DISTRICT JUDGE