# IN THE UNITED STATES DISTRICT COURT FOR THE
## NORTHERN DISTRICT OF ALABAMA
## SOUTHERN DIVISION

| | | |
|---|---|---|
| **AAL USA, INC.,** | ] | |
| | ] | |
| **Plaintiff,** | ] | |
| | ] | |
| **v.** | ] | |
| | ] | |
| **BLACK HALL, LLC, et al.,** | ] | |
| | ] | |
| **Defendants.** | ] | |
| | ] | **Case No. 2:16-CV-02090-KOB** |
| ———————————— | ] | **Case No. 2:17-CV-00399-KOB** |
| | ] | **This document relates only to** |
| | ] | **Case No. 00399.** |
| **AAL Group, Ltd.,** | ] | |
| | ] | |
| **Plaintiff,** | ] | |
| | ] | |
| **v.** | ] | |
| | ] | |
| **BLACK HALL AEROSPACE, INC.,** | ] | |
| ***et al.,*** | ] | |
| | ] | |
| **Defendants.** | ] | |

## AAL GROUP'S FIRST AMENDED COMPLAINT

AAL Group, Ltd. ("<u>Plaintiff</u>" or "<u>AAL Group</u>") submits the following as its

First Amended Complaint against Black Hall Aerospace, Inc. ("<u>BHA</u>"), Paul Daigle,

and Keith Woolford (collectively, "<u>Defendants</u>").

**PARTIES**

1.      AAL Group is a British Virgin Islands company with its principal place of business in Sharjah, United Arab Emirates. AAL Group supplies a broad and full spectrum of rotary wing aviation solutions to customers all over the globe. Notably, part of AAL Group's business is supporting troops fighting the war on terrorism. AAL Group has long done business with BHA's former parent company, AAL USA, Inc. ("AAL USA").[1]

2.      BHA is an Alabama corporation with its principal place of business in Huntsville, Alabama. BHA claims that it has been assigned all of AAL Group's contracts with AAL USA by virtue of an Asset Purchase Agreement. BHA has, according to it, assumed all the duties and obligations from the AAL Group contracts with AAL USA. But despite having taken the cash relative to the contracts, BHA has failed and refused to meet its obligations under the contracts it claims it was assigned.

3.      Paul Daigle ("Daigle") is an Alabama resident citizen.

4.      Keith Woolford ("Woolford") is a New Hampshire resident citizen. At the time AAL Group filed its original Complaint, Woolford was an Alabama resident citizen.

---

[1]AAL Group is a former franchisor of AAL USA but the two are not related entities. AAL USA is independently owned and operated. The owner of AAL USA, Oleg Sirbu ("Sirbu"), does not own any part of AAL Group, though he is the CEO of AAL Group.

## JURISDICTION AND VENUE

5.      This Court has jurisdiction over this matter pursuant to 28 U.S.C. § 1332(a) because the amount in controversy is greater than $75,000.00 and complete diversity exists between AAL Group, on the one hand, and Defendants on the other.

6.      Venue is proper in the Northern District of Alabama pursuant to 28 U.S.C § 1391(b)(1) and (b)(2) because Defendants are or were citizens of the State of Alabama and reside in this district and a substantial part of the events or omissions giving rise to the claims occurred in this district.

## FACTS

7.      AAL Group is an international contractor that provides aviation services to governments and prime contractors around the globe.

8.      On February 3, 2011, AAL Group's shareholder created AAL USA to support AAL Group's existing contracts involving aviation services with the U.S. government and its prime contractors.

9.      In early 2014, AAL Group and AAL USA became independently owned and operated; however, both companies continued their business relationship, working together on many contracts, including, but not limited to: (1) delivery of KN53 aviation equipment to AAL Group; (2) delivery of Bird Aero aviation equipment to AAL Group; (3) delivery of various Airbus aviation equipment to AAL

Group; and (4) maintenance, labor, engineering, and travel services performed by AAL Group.

10.  On or about June 19, 2015, BHA was incorporated to serve as AAL USA's FAA Part 145 aircraft repair facility.

11.  Daigle and Woolford contend that they own shares of BHA.

12.  In 2016, AAL USA was awarded a subcontract with prime contractor Lockheed Martin (now Leidos) through the Army Contracting Command--Aberdeen Proving Ground contract facility for Army Sensor Systems--Aerial Intelligence, Surveillance And Reconnaissance ("SS-AISR"). AAL USA was also awarded its first contract as a prime contractor for Worldwide Training Support Services ("WTSS") through the Army Contracting Command--Redstone Arsenal.

13.  On or about March 29, 2016, Leidos sponsored AAL USA for a security clearance with the Defense Security Service so that AAL USA could perform classified work.

14.  On or about September 23, 2016, Leidos sent a letter to Daigle (the former CEO of AAL USA and purportedly former CEO of BHA) stating that the Army Contracting Command--Aberdeen Proving Ground had notified Leidos that AAL USA must withdraw its personnel and property from the CENTCOM OCONUS operation. *See* ECF 1-1.

15.    According to Defendants, on September 29, with only days to provide a plan to Leidos, BHA and AAL USA entered into a transaction which transferred all of AAL USA's assets to BHA through an Asset Sale and Purchase Agreement (the "APA") so that BHA could perform its CLS and SS-AISR contracts with Leidos. *See* ECF No. 1-2.

16.    AAL USA alleges that it was fraudulently induced into transferring (or purportedly transferring) all of its assets and liabilities to BHA by Daigle and Woolford (the former CFO of AAL USA and former CFO of BHA), both employees of AAL USA at the time. Further, Daigle and Woolford, working with a number of co-conspirators, created and executed a scheme to transfer the assets of AAL USA, a company worth at least $20 million dollars, for a purported purchase price of $501,660.46. BHA and its owners then used AAL USA's own money to try to pay the purchase price.[2]

A.    **BHA CLAIMS THE APA TRANSFERRED ALL OF AAL USA'S CONTRACTS TO BHA.**

17.    BHA claims that it purchased all of AAL USA's assets, including its contracts, through the APA. *See* ECF 1-2, § 1.01(b) ("Buyer shall purchase from Seller … all contracts of any kind whatsoever.").

---

[2] It has recently come to light that BHA previously negotiated a sale/merger of BHA's ownership or substantially all of its assets for $20 million dollars. *See* ECF Nos. 1-4 and 1-5.

18.    Furthermore, subsequent to the APA, the parties executed an Assignment and Assumption Agreement (the "Assignment"), which transferred at least seven AAL USA contracts and their liabilities to BHA. *See* ECF No. 1-3. The Assignment provides that: "[BHA] hereby accepts such assignment and **assumes all of [AAL USA's] duties and obligations under the Assigned Contracts and agrees to pay, perform and discharge, as and when due, all of the obligations of Seller under the Assigned Contracts accruing on and after the Effective Date.**" *Id.* at ¶ 2 (emphasis added). The list of Assigned Contracts is designated on Schedule 1 of the APA. *See* ECF No. 1-6. According to BHA, its acquisition also included all of AAL USA's cash, which includes advances paid by AAL Group to AAL USA to perform certain of the contracts that BHA assumed.

19.    Woolford and Daigle were also adamant about transferring all of AAL USA's contracts to BHA under the APA. In addition to the foregoing express terms of the APA and Assignment, Woolford specifically instructed BHA and its lawyers, who drafted the APA, to include all contracts in the APA.

20.    Moreover, on December 15, 2016, more than six weeks after the execution of the APA, BHA's employee Alexandra Meyer sent AAL Group an email requesting a status update on an AAL USA contract that had been assigned to BHA in which AAL Group was to calibrate equipment. *See* Alexandra Meyer Email, ECF

No. 1-7. This email reflects that BHA indeed took on work previously performed by AAL USA in order to perform the contracts at issue.

**B.** **AAL GROUP HAS BEEN DAMAGED BY BHA'S FAILURE TO PERFORM UNDER THE CONTRACTS AND DEFENDANTS' RETENTION OF MONEY DUE AND OWING TO AAL GROUP.**

    **1.** **The Northrop Grumman Contract**

21. Between November 2013 and February 28, 2015, AAL USA entered into several Purchase Orders ("POs") with Northrop Grumman ("Northrop") in support of a Certified Logistics Support ("CLS") contract to provide technical maintenance of Mi type helicopters. AAL USA, acting as the prime contractor, subcontracted various work under two POs to AAL Group, including labor, travel, direct costs for testing supplies, visas, and other necessary procurement. *See* PO #6006-R1 and PO #6006-R2 attached as Exs. 10-11. PO #6006-R1 is for approximately $8.7 million dollars, and PO #6006-R2 is for approximately $9.7 million dollars. ECF Nos. 1-8 and 1-9.

22. According to BHA, it is now the prime contractor and AAL Group the subcontractor. *See* ECF No. 1-3, at ¶ 2. In fact, the Northrop contract is specifically listed on the Schedule of Assigned Contracts. BHA assumed all of AAL USA's duties and obligations under this contract. *See* ECF No. 1-3.

23. AAL Group has performed all of its duties and obligations as subcontractor under the POs. On January 29, 2015, AAL Group received a

Certification of Completion for PO #6006-R1, which represents work performed by AAL Group as a subcontractor to the CLS Project. *See* ECF No. 1-10. Furthermore, on January 29, 2015, AAL Group received a Certificate of Completion for PO #6006-R2, which also represents work performed by AAL Group as subcontractor in support of the CLS Project. *See* ECF No. 1-11. The amount owed to AAL Group under these two POs is $2,834,706.07.

24.    Between January 1, 2015 and February 18, 2015 AAL Group billed its services to AAL USA under additional POs approved on the CLS Project in the amount of $745,551.13 (invoice No. 614/AAL070515). These amounts are also now owed to AAL Group by BHA.

25.    For the accounts receivable from Northrop, AAL USA factored these receivables with Versant Funding, LLC, a company that provides financing using accounts receivable as collateral.[3] Here, AAL USA factored at least $3,580,257.20 (solely AAL Group's share, excluding interest) of Northrop receivables, none of which was transferred to AAL Group. In fact, BHA's CFO Woolford sent Northrop an assignment letter that instructed Northrop "to pay the full amount of all invoices [Northrop Grumman] now due, and all invoices which in the future are submitted or

---

[3] Factoring occurs when a company sells its accounts receivable at a discount in return for a lump sum payment. The factoring company then collects the outstanding accounts receivable.

became due and payable, directly and solely to: VERSANT FUNDING LLC." *See* Assignment Letter to Northrop, ECF No. 1-12.

26.    After factoring the receivables, AAL USA -- under Daigle's and Woolford's direction -- failed to pay AAL Group the money owed to AAL Group. Daigle and Woolford spent the money in some other way, leaving AAL Group without proper compensation under the Northrup contract.

27.    In August 2016, AAL Group CEO (and then AAL USA majority owner) Sirbu met with Daigle, Woolford, and then AAL USA employee Randy Munger ("Munger") in Huntsville, a former Northrop employee who had worked on the very contract at issue. The meeting occurred in Daigle's office. Sirbu inquired into the apparently overdue payment from Northrop. Sirbu instructed Munger to reach out to his former employer to seek a status update on payment.

28.    Daigle and Woolford did not correct Sirbu or Munger in the meeting, suppressing that Northrop had already paid but that Daigle and Woolford had factored the invoices and diverted the funds to their personal gain and the use of BHA.

29.    In fact, Daigle and Woolford misrepresented to Sirbu that Northrop had not paid.

30.    Daigle initially told Munger that he would contact Northrop himself. Later, Woolford told Munger that Northrop had already paid.

31.     After the meeting, Daigle and Woolford instructed Munger not to contact Northrop, further suppressing that Northrop had already paid and that Daigle, Woolford, and their co-conspirators had factored the Northrop receivables.

32.     The total amount owed by BHA and/or Daigle and Woolford to AAL Group for the Northrop work equals $3,580,257.20 outstanding for work performed, plus interest. *See* ECF No. 1-13 and 1-14.

### 2.     The Airbus Iraqi MILDS® Contract

33.     On June 15, 2015, AAL USA entered into a contract with AAL Group to supply and deliver Airbus MILDS® aviation equipment to AAL Group. Subsequently, Additional Agreement #1 was signed by the parties on January 19, 2016, to increase the price of the order by 1,670,020 Euros.

34.     AAL Group, in accordance with Additional Agreement #1, made an advance payment to AAL USA in the amount of $362,316.03 (334,004 Euros) for the desired Airbus aviation equipment, on February 8, 2016.

35.     AAL USA's obligations to perform its contracts with AAL Group transferred to BHA under the APA; in fact, this contract is also listed on Schedule 1 of the APA. *See* ECF No. 1-6, ¶ 4.

36.     BHA is in material breach of the contract because it has not delivered any of the ordered equipment under Additional Agreement #1 to Sale and Purchase Agreement # AAL/552.

37.     AAL Group requests that the Court rescind the contract and order BHA to refund AAL Group its deposit in the amount of $362,316.03.

**3.      The F2AST Certified Logistics Support (CLS) Contract**

34.     On September 1, 2015, and September 1, 2016 AAL Group entered into two POs with AAL USA where AAL Group agreed to provide labor and travel services as a subcontractor for AAL USA in support of AAL USA's contract with Lockheed Martin. *See* F2AST POs, ECF No. 1-15.

38.     BHA (as assignee from AAL USA) is now the prime contractor and AAL Group the subcontractor. According to the APA, BHA acquired this contract and all its related duties and obligations. *See* ECF No. 1-3, ¶ 2.

39.     AAL Group performed all of its duties and obligations under the POs. The amount owed to AAL Group by BHA under these two POs is $418,884.65.

40.     BHA has yet to pay the outstanding amount of $418,884.65 owed to AAL Group and is in breach of the F2AST contracts.

41.     AAL Group requests that the Court require BHA to pay AAL Group the amount of $418,884.65 outstanding for work performed.

**4.      The MAG DS Helicopter Contract**

42.     On January 19, 2016, AAL Group entered into a contract with AAL USA to lease to AAL USA one Mi 8MTV Helicopter. In addition to the helicopter,

AAL Group provided training, certification support, licenses, safety inspections, and maintenance services.

43.    AAL USA's obligations to perform its contracts with AAL Group transferred to BHA under the APA—like the foregoing contracts, this contract is also listed on Schedule 1 of the APA. *See* ECF No. 1-6, ¶ 7.

44.    BHA has yet to pay the outstanding amount of $223,000.00 owed to AAL Group pursuant to the June 2016 through October 2016 invoices, and is in breach of the MAG DS Helicopter Contract.

45.    On top of that amount, Daigle lobbied MAG DS to stop doing business with AAL USA and AAL Group, costing AAL Group the opportunity to lease at least one helicopter.

### 5.    The KN53 Aviation Equipment Contract

46.    On October 1, 2011, AAL USA entered into a contract with AAL Group to supply multiple items, including delivery of KN53 aviation equipment. *See* KN53 Contract, ECF No. 1-16.[4] Under the terms of this contract, AAL USA agreed to deliver to AAL Group the KN53 equipment. *Id.* AAL Group made an advance payment of $298,171.50 on February 7, 2012, a second advance payment on March 28, 2012, of $54,689.20, and a third advance payment of $502,532.59.

---

[4] Mi Helicopter Solutions was the predecessor to AAL USA. After the commencement of the KN53 contract, Mi Helicopter Solutions changed its name to AAL USA.

47.    Later, AAL USA delivered the requested items but failed to pay the balance owed -- $77,012.50.

48.    AAL USA's obligations to perform this contract with AAL Group transferred to BHA under the APA; in fact, this contract is also listed on Schedule 1 of the APA. *See* ECF No. 1-6.

49.    BHA has failed to deliver the KN53 equipment to AAL Group pursuant to the terms of the contract; therefore, BHA is in breach of the contract.

50.    AAL Group requests that the Court require BHA to pay AAL Group the amount of $77,012.50, as a refund of the amount paid by AAL Group for the cost of supplies required to perform the contract.

**6.    The Science & Engineering Services, LLC Check**

51.    On or about September 2016, AAL Group performed work for Science & Engineering Services, LLC (SES). To pay for that work, SES issued check **6497, dated September 16, 2016, in the amount of $146,556.24, made out to AAL Group, LTD c/o AAL USA.

52.    The Defendants deposited this check but did not transfer the proceeds to AAL Group. Instead, BHA, Daigle, and Woolford took the proceeds for their own use.

**7.      Funds for payment to suppliers**

53.      Defendants' acts with the SES check and proceeds were par for the course. Before September 2016, AAL Group had transferred additional funds to AAL USA for payments to suppliers (e.g., Airbus and BIRD Aero ("BIRD")). Those funds were taken by BHA, Daigle, and Woolford and never paid to the suppliers. As a result of BHA's, Daigle's, and Woolford's actions, AAL Group suffered even greater losses.

## CAUSES OF ACTION

### COUNT ONE
### BREACH OF CONTRACT

54.      AAL Group incorporates paragraphs 2, 9-20, and 34-35.

55.      AAL Group has valid contracts with BHA, specifically the F2AST contract and the MAG DS Helicopter contract.

56.      AAL Group has performed all of its obligations under the contracts and is not in breach.

57.      Through its actions described herein, BHA has breached its contracts with AAL Group.

58.      AAL Group has been damaged as a result of BHA's breaches.

WHEREFORE, AAL Group demands judgment against BHA, including an award for compensatory damages, interest, costs, rescission, and all other relief available.

## <u>COUNT TWO</u>
## <u>UNJUST ENRICHMENT/MONEY HAD AND RECEIVED</u>

59.    AAL Group incorporates paragraphs 2 and 7-53.

60.    AAL Group conferred a benefit on Defendants by performing work and advancing money.

61.    By their actions described in this Complaint, Defendants have been unjustly enriched at AAL Group's expense and have retained money that should be returned to AAL Group.

62.    BHA, Daigle, and Woolford accepted, and later transferred and took for themselves the benefits and proceeds from the Northrop purchase orders, the Airbus Iraqi MILDS® contract, the F2AST contract, the MAG DS contract, the KN53 contract, funds to be paid to Airbus and BIRD, and the SES check and the proceeds from it.

63.    During or after the APA transaction, BHA, Daigle, Woolford, and their co-conspirators improperly transferred to themselves the proceeds of the foregoing contracts and have to date refused to compensate AAL Group for the benefits conferred upon the Defendants.

64.    AAL Group has a reasonable expectation of compensation in each instance.

WHEREFORE, AAL Group demands judgment against Defendants, including an award for compensatory damages, interest, costs, and all other relief available.

## COUNT THREE
## PROMISSORY ESTOPPEL

65. AAL Group incorporates paragraphs 2 and 7-53.

66. Daigle and Woolford, with knowledge of the true facts, and by their words, conduct, and/or silence, represented and promised that AAL USA had not been paid by Northrop and that AAL Group would be paid when AAL USA was paid.

67. Daigle and Woolford, by words, conduct, and/or silence, represented and promised that AAL Group would be paid in full under the Airbus Iraqi MILDS® contract, the F2AST contract, the MAG DS contract, and the KN53 contract.

68. Daigle and Woolford, by words, conduct, and/or silence, represented and promised that AAL Group's funds would be used to pay Airbus and BIRD.

69. Daigle and Woolford by words, conduct, and/or silence, represented and promised that AAL Group would receive the payment made by SES.

70. Daigle and Woolford should have reasonably expected to induce action or forbearance of a definite and substantial character on the part of AAL Group, and their words and deed did induce such action or forbearance.

71.    Injustice to AAL Group can be avoided only by enforcement of Daigle's and Woolford's promises.

WHEREFORE, AAL Group demands judgment against Daigle and Woolford, including an award for compensatory damages, specific performance, interest, costs, and all other relief available.

## COUNT FOUR
## EQUITABLE ESTOPPEL

72.    AAL Group incorporates paragraphs 2 and 7-53.

73.    Daigle and Woolford, with knowledge of the true facts, and by their words, conduct, and/or silence, represented and promised that AAL USA had not been paid by Northrop and that AAL Group would be paid when AAL USA was paid.

74.    Daigle and Woolford, by words, conduct, and/or silence, represented and promised that AAL Group would be paid in full under the Airbus Iraqi MILDS® contract, the F2AST contract, the MAG DS contract, and the KN53 contract.

75.    Daigle and Woolford, by words, conduct, and/or silence, represented and promised that AAL Group's funds would be used to pay Airbus and BIRD.

76.    Daigle and Woolford by words, conduct, and/or silence, represented and promised that AAL Group would receive the payment made by SES.

77.    Daigle and Woolford should have reasonably expected to induce action or forbearance of a definite and substantial character on the part of AAL Group, and their words and deed did induce such action or forbearance.

78.    AAL Group relied on Daigle's and Woolford's representations.

79.    AAL Group would be harmed if Daigle and Woolford were permitted to assert any claim inconsistent with their earlier conduct.

WHEREFORE, AAL Group demands judgment against Defendants, including an award for compensatory damages, specific performance, interest, costs, and all other relief available.

## COUNT FIVE
## FRAUD/SUPPRESSION/PROMISSORY FRAUD

80.    AAL Group incorporates paragraphs 2 and 21-53.

81.    In August 2016, Sirbu met with Daigle, Woolford, and Munger in Daigle's office. Sirbu inquired into the apparently overdue payment from Northrop. Sirbu instructed Munger, who had previously worked for Northrop to reach out to his former employers to seek a status update on payment.

82.    Daigle and Woolford did not correct Sirbu or Munger in the meeting, suppressing that Northrop had already paid but that Daigle and Woolford had factored the invoices and diverted the funds to their personal gain and the use of BHA.

83.    In fact, Daigle and Woolford misrepresented to Sirbu that Northrop had not paid.

84.    After the meeting, Daigle and Woolford instructed Munger not to contact Northrop, further suppressing that Northrop had already paid and that Daigle, Woolford, and their co-conspirators had factored the Northrop receivables.

85.    Daigle and Woolford, by words, conduct, and/or silence, represented and promised that AAL Group would be paid in full under the Airbus Iraqi MILDS® contract, the F2AST contract, the MAG DS contract, and the KN53 contract.

86.    Daigle and Woolford, by words, conduct, and/or silence, represented and promised that AAL Group's funds would be used to pay Airbus and BIRD.

87.    Daigle and Woolford by words, conduct, and/or silence, represented and promised that AAL Group would receive the payment made by SES.

88.    Daigle's and Woolford's representations were false representations of material facts.

89.    AAL Group reasonably relied on Daigle's and Woolford's misrepresentations and suppressions.

90.    At the time of their representations, Daigle and Woolford had no intention of paying AAL Group the money owed under the Northrop purchase orders.

91.    Daigle and Woolford acted with the intent to deceive.

WHEREFORE, AAL Group demands judgment against Defendants, including an award for compensatory damages, punitive damages, interest, costs, and all other relief available.

## COUNT SIX
## CONVERSION

92.    AAL Group incorporates paragraphs 2 and 51-53.

93.    Through their actions described herein, BHA, Daigle, and Woolford have converted, misappropriated, and/or otherwise stolen AAL Group's assets, including, without limitation, AAL Group's funds, prepayments, and the SES check.

WHEREFORE, AAL Group demands judgment against BHA, Daigle, and Woolford, including an award for compensatory damages, punitive damages, interest, costs, and all other relief available under Alabama law.

## COUNT SEVEN
## TORTIOUS INTERFERENCE

94.    AAL Group incorporates paragraphs 2, 7-20, 42-45, and 51-53.

95.    AAL Group had protectible business relationships, including, without limitation, business relationships with MAG, Airbus, BIRD, and SES.

96.    BHA, Daigle, and Woolford knew of those relationships and were strangers to those relationships.

97.    BHA, Daigle, and Woolford intentionally interfered with those relationships.

98.     AAL Group was damaged by the Defendants' interference.

WHEREFORE, AAL Group demands judgment against BHA, Daigle, and Woolford, including an award for compensatory damages, punitive damages, interest, costs, and all other relief available under Alabama law.

## COUNT EIGHT
## CONSPIRACY

99.     AAL Group incorporates paragraphs 2 and 10-53.

100.    By their actions described herein, BHA, Daigle, and Woolford conspired and combined to accomplish unlawful ends and/or to accomplish lawful ends by unlawful means.

WHEREFORE, AAL Group demands judgment against BHA, Daigle, and Woolford, including an award for compensatory damages, punitive damages, interest, costs, and all other relief available under Alabama law.

## PRAYER FOR RELIEF

AAL Group requests the following damages and/or relief:

1.      Compensatory damages of at least $4,661,470.38, plus any additional compensatory damages to be determined at trial;

2.      Consequential damages in an amount to be determined at trial;

3.      Punitive damages;

4.      Costs and expenses, including reasonable attorneys' fees;

5.      Pre and post-judgment interest; and

6.     All other relief that the Court deems justified under the circumstances.

## AAL GROUP DEMANDS TRIAL BY JURY ON
## ALL CLAIMS SO TRIABLE.

Dated: March 20, 2018

*s/ Benjamin B. Coulter*
Benjamin Coulter

*One of the Attorneys for Plaintiff*
AAL Group, Ltd.

**OF COUNSEL:**

BURR & FORMAN LLP
420 North 20th Street
Suite 3400
Birmingham, Alabama 35203
Telephone:  (205) 251-3000
Facsimile:  (205) 458-5100
bcoulter@burr.com

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that I have served a copy of the foregoing document by Notice of Electronic Filing on the following on March 20, 2018.

Benjamin R Little
blittle@sirote.com

J Rushton McClees
rmcclees@sirote.com

James H Richardson
jim@richardsonmaples.com

Joshua L Hornady
jhornady@sirote.com

Mark Bradley Sweet
msweet@wileyrein.com

Michael J Douglas
mdouglas@leakdouglas.com

Oliver Benton Curtis, III
bcurtis@broadandcassel.com

Roderic G Steakley
rsteakley@sirote.com

Stephen J Obermeier
sobermeier@wileyrein.com

Thomas A Woodall
twoodall@sirote.com

Todd A Bromberg
tbromberg@wileyrein.com

*s/ Benjamin B. Coulter*
OF COUNSEL