FILED
2018 Jul-10 PM 12:54
U.S. DISTRICT COURT
N.D. OF ALABAMA

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION

| | | |
|---|---|---|
| AAL USA, INC., | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Case No. 2:16-cv-02090-KOB |
| | ) | |
| BLACK HALL AEROSPACE, INC., et al., | ) | This Document Relates Only to Case 2:17-cv-00399-KOB |
| | ) | |
| Defendants. | ) | |

## MEMORANDUM OPINION

This matter is before the court on Defendant Keith Woolford's motion to dismiss Plaintiff AAL Group's amended complaint. (Doc. 226).

AAL Group alleges that for years it conducted business with a separate, but similarly-named, company called AAL USA. AAL USA's Chief Financial Officer at the time was Defendant Keith Woolford. AAL USA—which is not a party to this case, but is a party to a related case before this court (*AAL USA, Inc. v. Black Hall Aerospace, Inc.*, 2:16-cv-02090-KOB)—entered an Asset Purchase Agreement with Black Hall Aerospace, a company controlled by Mr. Woolford and other AAL USA executives. The Asset Purchase Agreement assigned a number of AAL USA's contracts with AAL Group to Black Hall Aerospace.

AAL Group alleges that, before, during, and after the Asset Purchase Agreement, Mr. Woolford and other executives who worked for AAL USA and Black Hall Aerospace stole funds owed to AAL Group for their personal use. As a result, AAL Group sued Black Hall Aerospace, Mr. Woolford, and another executive, Paul Daigle. AAL Group has settled with Black Hall Aerospace and Mr. Daigle, leaving only Mr. Woolford as a defendant in this case. AAL Group asserts the following claims against Mr. Woolford: (1) unjust enrichment/money

had and received[1] ("Count Two"); (2) promissory estoppel ("Count Three"); (3) equitable estoppel ("Count Four"); (4) fraud ("Count Five"); (5) conversion ("Count Six"); (6) tortious interference ("Count Seven"); and (7) conspiracy ("Count Eight"). (Doc. 182 at 15–21).

The court WILL GRANT IN PART AND DENY IN PART Mr. Woolford's motion to dismiss the amended complaint. The court WILL NOT DISMISS Count Two for failure to state an unjust enrichment claim because AAL Group has adequately alleged that Mr. Woolford was unjustly enriched at its expense, and the court cannot conclude from the face of the complaint that the statute of limitations bars the claim. The court WILL DISMISS WITHOUT PREJUDICE Counts Three and Four because AAL Group has not alleged facts showing that Mr. Woolford made a promise to AAL Group. The court WILL DISMISS WITHOUT PREJUDICE Count Five for failure to plead with particularity.

The court WILL NOT DISMISS the part of Count Six relating to the conversion of a check that Science & Engineering Services made out to AAL Group, but the court WILL DISMISS WITHOUT PREJUDICE the remainder of the count for failure to state a conversion claim because AAL Group fails to allege that the other funds were specific and identifiable. The court WILL DISMISS WITHOUT PREJUDICE Count Seven for failure to state a tortious interference claim because AAL Group has not alleged facts showing what Mr. Woolford did to interfere in its business relations. The court WILL DISMISS WITH PREJUDICE the entirety of Count Eight for failure to state a conspiracy claim because the intracorporate conspiracy doctrine bars that claim.

---

[1] AAL Group's amended complaint refers to unjust enrichment *and* money had and received in the same count. (Doc. 1 at 13). Under Alabama law, which is the controlling law in this case, unjust enrichment and money had and received are essentially the same cause of action. *See Dickinson v. Cosmos Broadcasting Co.*, 782 So. 2d 260, 266 (Ala. 2000). As a result, the court will refer only to unjust enrichment when discussing those claims.

## I.  BACKGROUND

### 1.  Procedural History

In March 2017, AAL Group filed suit against Black Hall Aerospace, Mr. Woolford, and Mr. Daigle. (Doc. 1). The initial complaint raised only claims of breach of contract and unjust enrichment. Defendants filed a motion to dismiss, which the court granted in part and dismissed in part. (Doc. 170).

AAL Group filed an amended complaint, again naming Black Hall Aerospace, Mr. Woolford, and Mr. Daigle. (Doc. 182). The amended complaint raised the same breach of contract and unjust enrichment claims, but also added claims for promissory and equitable estoppel, fraud, conversion, tortious interference, and conspiracy. Mr. Woolford moved to dismiss the amended complaint, and while the parties were briefing that motion, Black Hall Aerospace and Mr. Daigle settled with AAL Group. (*See* Doc. 245). As a result, the court dismissed Black Hall Aerospace and Mr. Daigle as defendants, and dismissed all of AAL Group's claims against them. (Doc. 250). The only defendant remaining is Mr. Woolford, and the only claims remaining are those asserted against him.

### 2.  Factual Allegations

At this stage, the court must accept as true the allegations in the complaint and construe them in the light most favorable to the plaintiff. *Butler v. Sheriff of Palm Beach Cty.*, 685 F.3d 1261, 1265 (11th Cir. 2012). "A court's review on a motion to dismiss is limited to the four corners of the complaint. A court may consider only the complaint itself and any documents referred to in the complaint which are central to the claims." *Wilchombe v. TeeVee Toons, Inc.*, 555 F.3d 949, 959 (11th Cir. 2009) (citation and quotation marks omitted).

AAL Group is a contractor that provides aviation services to governments and prime contractors. In 2011 it formed a subsidiary, the similarly-named AAL USA, to support some of its contracts. In early 2014, AAL Group and AAL USA became independent companies, but they continued to work together on various contracts. For some unspecified period of time, Mr. Daigle was the CEO of AAL USA and Mr. Woolford was its CFO. (Doc. 182 at 3–5).

AAL Group and AAL USA had entered into a number of contracts with each other. AAL Group's amended complaint describes five of those contracts in detail. In four of those contracts—which AAL Group calls the Airbus Iraqi MILDS® contract; the F2AST Certified Logistics Support contract; the MAG DS Helicopter contract; and the KN53 Aviation Equipment contract—either AAL USA or AAL Group contracted to provide the other with supplies, labor, or leased equipment. In the fifth, which AAL Group calls the Northrop Grumman contract, AAL USA contracted with Northrop Grumman to provide technical maintenance of helicopters, then subcontracted certain work to AAL Group. (Doc. 182 at 7–13).

While AAL USA and AAL Group were doing business with each other, AAL USA's then-CEO, Mr. Daigle, incorporated Black Hall Aerospace. Mr. Daigle and Mr. Woolford own shares of that company and also served, for an unspecified period of time, as its CEO and CFO, respectively. On September 29, 2016, AAL USA and Black Hall Aerospace entered into an Asset Purchase Agreement, under which AAL USA transferred to Black Hall Aerospace all of its assets, including all of its cash and its contracts with AAL Group. (Doc. 189 at 4–5; Doc. 1-2). In a related case before this court, AAL USA contests the validity of the Asset Purchase Agreement, but the court will not delve into the details of that dispute because, now that Black Hall Aerospace has been dismissed from this case, the Agreement is only marginally related to AAL Group's lawsuit against Mr. Woolford.

4

According to AAL Group, by the time AAL USA and Black Hall Aerospace entered into the Asset Purchase Agreement in September 2016, AAL Group had either performed its obligations under those contracts, or made advance payments to AAL USA, but AAL USA had not yet performed its obligations under the contracts. (Doc. 182 at 10–13). In addition to its contracts with AAL USA, AAL Group performed work for a company called Science & Engineering Services, LLC (SES), which issued a $146,556.24 check to AAL Group c/o AAL USA. Mr. Woolford deposited the check but, instead of transferring the funds to AAL Group, he and the other former defendants "took the proceeds for their own use." Finally, at some point before September 2016, AAL Group had transferred money to AAL USA for payments to suppliers, including Airbus and BIRD Aero. Mr. Woolford took that money but did not pay the suppliers, causing AAL Group "even greater losses." (Doc. 182 at 10–14.).

AAL Group alleges that before, during, and after AAL USA and Black Hall Aerospace entered the Asset Purchase Agreement, Mr. Woolford, Mr. Daigle, and Black Hall Aerospace were involved in a conspiracy to steal AAL Group's money. AAL Group does not provide any details about how Mr. Woolford stole the money relating to the Airbus Iraqi contract, the F2AST contract, the MAG contract, or the KN53 contract. But it alleges that, at some point before March 2015, Mr. Woolford began "factoring" AAL USA's accounts receivable under the Northrop Grumman contract through a company called Versant Funding. Factoring is a process whereby a company sells its accounts receivable to another company at a discount in exchange for a lump sum payment. (Doc. 182 at 8 & n.3).

Under Mr. Woolford's direction, AAL USA factored at least $3,580,257.20 of Northrop Grumman receivables—an amount that, according to AAL Group, represents "solely AAL Group's share, excluding interest." In August 2016, AAL Group's CEO, Oleg Sirbu, met with

5

Mr. Daigle, Mr. Woolford, and another AAL USA employee, Randy Munger. At that meeting, Mr. Sirbu asked about the overdue payments on the Northrop Grumman purchase orders. Mr. Woolford misrepresented to him that Northrop Grumman had not yet paid what it owed to AAL USA, so AAL USA could not yet pay AAL Group. Mr. Sirbu instructed Mr. Munger to seek a status update from Northrop Grumman, but after the meeting, Mr. Woolford told Mr. Munger not to contact Northrop Grumman because Northrop Grumman *had*, in fact, already paid the amounts it owed. (Doc. 182 at 8–10).

Instead of paying AAL Group for the work it had performed, Mr. Woolford "spent the money in some other way, leaving AAL Group without proper compensation under the Northrop contract." AAL Group alleges that Mr. Daigle and Mr. Woolford "factored the invoices and diverted the funds to their personal gain and the use of [Black Hall Aerospace]." (Doc. 182 at 9).

## II. DISCUSSION

Mr. Woolford moves to dismiss the amended complaint. (Doc. 226). Federal Rule of Civil Procedure 8(a) requires "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). A Rule 12(b)(6) motion to dismiss attacks the legal sufficiency of the complaint. "To survive a motion to dismiss, the plaintiff must plead 'a claim to relief that is plausible on its face.'" *Butler*, 685 F.3d at 1265 (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)).

The court must accept as true the factual allegations in the complaint and construe them in the light most favorable to the plaintiff, making all reasonable inferences in favor of the plaintiff. *Id.* But the court need not accept as true the plaintiff's legal conclusions. *Mamani v. Berzain*, 654 F.3d 1148, 1153 (11th Cir. 2011). Accordingly, the court must distinguish between the complaint's well-pleaded factual allegations and the complaint's legal conclusions made

without adequate factual support. *Id.* A complaint that provides only "labels and conclusions" or "a formulaic recitation of the elements of a cause of action" does not state a claim sufficient to survive a Rule 12(b)(6) motion. *Twombly*, 550 U.S. at 555.

In addition, the Federal Rules of Civil Procedure provide that, for claims involving fraud, "a party must state with particularity the circumstances constituting fraud." Fed. R. Civ. P. 9(b). "Particularity means that a plaintiff must plead facts as to time, place, and substance of the defendant's alleged fraud, specifically the details of the defendant['s] allegedly fraudulent acts, when they occurred, and who engaged in them." *U.S. ex rel. Atkins v. McInteer*, 470 F.3d 1350, 1357 (11th Cir. 2006). In other words,

> Rule 9(b) is satisfied if the complaint sets forth (1) precisely what statements were made in what documents or oral representations or what omissions were made, and (2) the time and place of each such statement and the person responsible for making (or, in the case of omissions, not making) same, and (3) the content of such statements and the manner in which they misled the plaintiff, and (4) what the defendants obtained as a consequence of the fraud.

*Mizzaro v. Home Depot, Inc.*, 544 F.3d 1230, 1237 (11th Cir. 2008) (quotation marks omitted).

1. Unjust Enrichment

In Count Two, AAL Group contends that Mr. Woolford is liable for unjust enrichment because he "accepted, and later transferred and took for [himself] the benefits and proceeds from the [five contracts], funds to be paid to Airbus and BIRD, and the SES check and the proceeds from it." It further alleges that "[d]uring or after the [Asset Purchase Agreement] transaction, [Black Hall Aerospace], Daigle, Woolford, and their co-conspirators improperly transferred to themselves the proceeds of the foregoing contracts and have to date refused to compensate AAL Group for the benefits conferred upon [them]." (Doc. 182 at 15). Mr. Woolford contends that AAL Group has not stated an unjust enrichment claim because (1) it fails to allege that it provided a benefit to Mr. Woolford or that it reasonably expected compensation from him; (2) he

7

is not individually liable for the acts of AAL USA or Black Hall Aerospace; and (3) the statute of limitations bars the unjust enrichment claims arising out of the Northrop Grumman and KN53 contracts. (Doc. 227 at 10–17).

Under Alabama law, a plaintiff asserting an unjust enrichment claim must show: "(1) the defendant knowingly accepted and retained a benefit, (2) provided by another, (3) who has a reasonable expectation of compensation." *Matador Holdings, Inc. v. HoPo Realty Investments, LLC*, 77 So. 3d 139, 145 (Ala. 2011) (quoting *Portofino Seaport Vill., LLC v. Welch*, 4 So. 3d 1095, 1098 (Ala. 2008)). The Alabama Supreme Court has explained that

> The retention of a benefit is unjust if (1) the donor of the benefit acted under a mistake of fact or in misreliance on a right or duty, *or* (2) the recipient of the benefit engaged in some unconscionable conduct, such as fraud, coercion, or abuse of a confidential relationship. In the absence of mistake or misreliance by the donor or wrongful conduct by the recipient, the recipient may have been enriched, but he is not deemed to have been unjustly enriched.

*Mantiply v. Mantiply*, 951 So. 2d 638, 654–55 (Ala. 2006) (quotation marks and alteration omitted) (emphasis added).

AAL Group alleges that, after it entered into contracts with AAL USA, it either paid advances to, or performed work for, AAL USA, but AAL USA failed to perform its obligations or pay AAL Group in return. Then, after AAL USA and Black Hall Aerospace entered into the Asset Purchase Agreement, AAL USA's pending obligations to AAL Group transferred to Black Hall Aerospace. But, instead of fulfilling those obligations, Mr. Woolford, as Black Hall Aerospace's CFO, diverted to himself the funds that Black Hall Aerospace should have paid to AAL Group. (*See* Doc. 182 at 15 (specifically stating that Mr. Woolford diverted the funds "*[d]uring or after* the [Asset Purchase Agreement] transaction" (emphasis added)).

AAL Group has stated a claim for unjust enrichment against Mr. Woolford. It alleges that, by using AAL USA and Black Hall Aerospace to his benefit, he took funds that rightfully

8

belong to AAL Group. *See Mantiply*, 951 So. 2d at 654–55 (stating that enrichment is unjust if the recipient "engaged in some unconscionable conduct, such as fraud, coercion, or abuse of a confidential relationship"). To the extent that Mr. Woolford contends that AAL Group cannot hold him liable for the acts of AAL USA or Black Hall Aerospace, the amended complaint alleges that Mr. Woolford *himself* stole the funds at issue.

Mr. Woolford also argues that the statute of limitations bars part of AAL Group's unjust enrichment claim. Because the statute of limitations presents an affirmative defense, the court may dismiss a claim under the statute of limitations *only* if "the face of the complaint" makes clear that the claim is time-barred. *La Grasta v. First Union Sec., Inc.*, 358 F.3d 840, 845 (11th Cir. 2004).

Under Alabama law, a two-year statute of limitations applies to tort claims, including fraud claims. *See* Ala. Code § 6-2-3. The statute of limitations begins to run upon "the discovery by the aggrieved party of the fact constituting the fraud." *Id.* Count Two, of course, raises a claim of unjust enrichment, not fraud. This court has not located any Alabama cases holding that the two-year statute of limitations applicable to fraud claims also applies to unjust enrichment claims arising out of fraud. But because AAL Group does not contend that a different statute of limitations applies, the court will use the two-year statute of limitations. *See Auburn Univ. v. Int'l Business Machines, Corp.*, 716 F. Supp. 2d 1114, 1117–18 (M.D. Ala. 2010) (predicting that Alabama courts would hold that the statute of limitations on an unjust enrichment claim would follow the statute of limitations applicable to the underlying conduct).

Mr. Woolford contends that the statute of limitations bars the unjust enrichment claim to the extent it arises out of the Northrop Grumman contract and the KN53 contract because AAL Group performed the work under those contracts more than two years before it filed this lawsuit

on March 14, 2017. (*See* Doc. 182 at 8, 12–13). But, contrary to Mr. Woolford's contention, the statute of limitations on a fraud-based unjust enrichment claim begins to run upon "the discovery by the aggrieved party of the fact constituting the fraud." Ala. Code § 6-2-3. And AAL Group did not plead when it discovered the fraud.

The court cannot conclude that the face of AAL Group's amended complaint clearly reveals that the statute of limitations bars the unjust enrichment claim as to Mr. Woolford's conduct relating to the Northrop Grumman and KN53 contracts. Accordingly, the court WILL NOT DISMISS Count Two.

      2.      <u>Promissory and Equitable Estoppel</u>

In Counts Three and Four, AAL Group raises claims of promissory and equitable estoppel against Mr. Woolford. (Doc. 1982 at 16–18). According to AAL Group, Mr. Woolford, "by words, conduct, and/or silence, represented and promised" that AAL Group "would be paid" under the five contracts and the SES check, and that AAL Group's funds "would be used to pay Airbus and BIRD." (Doc. 182 at 16–18). Mr. Woolford contends that the court should dismiss AAL Group's promissory and equitable estoppel claims because, among other reasons, AAL Group does not allege that Mr. Woolford made any promises to it or that AAL Group relied on any promises. (Doc. 227 at 17–19).

The elements of a promissory estoppel claim are (1) a promise; (2) that the promisor "should reasonably expect to induce action or forbearance of a definite and substantial character"; (3) that the promise induced such action or forbearance; and (4) the existence of injustice that "can be avoided only by enforcement of the promise." *Branch Banking & Tr. Co. v. Nichols*, 184 So. 3d 337, 347 (Ala. 2015). Under Alabama law, "the elements of equitable and promissory estoppel are essentially the same." *Id*.

10

The amended complaint asserts in a conclusory manner that, by his "words, conduct, and/or silence," Mr. Woolford made a number of promises to AAL Group, but it fails to support that conclusion with factual allegations. The court may not accept as true the plaintiff's legal conclusions if the plaintiff does not provide factual allegations to support them. *See Mamani*, 654 F.3d at 1153. The closest the amended complaint comes is the allegation that Mr. Woolford misrepresented to Mr. Sirbu that AAL USA had not yet paid AAL Group on the Northrop Grumman contract because Northrop Grumman had not yet paid AAL USA. (Doc. 182 at 8–9). But, although that statement was a misrepresentation, it is not a *promise* that Mr. Woolford will personally pay AAL Group the money owed on a contract between AAL Group and AAL USA. The court WILL DISMISS WITHOUT PREJUDICE Counts Three and Four for failure to state a claim.

4. Fraud

In Count Five, AAL Group asserts that Mr. Woolford is liable for fraud, fraudulent suppression, and promissory fraud for his "words, conduct, and/or silence" about the five contracts, the SES check, and the funds to be paid to Airbus and BIRD. (Doc. 182 at 18–20). Mr. Woolford contends that AAL Group has failed to plead its fraud claim with the particularity required by Rule 9(b). (Doc. 227 at 19–20).

Under Alabama law, the elements of a fraud claim are "(1) a false representation (2) of a material existing fact (3) relied upon by the plaintiff (4) who was damaged as a proximate result of the misrepresentation." *Deng v. Scroggins*, 169 So. 3d 1015, 1024 (Ala. 2014). Promissory fraud

> is a claim based upon a promise to act or not to act in the future. To succeed on a claim of promissory fraud, . . . plaintiffs must prove two elements in addition to the elements of misrepresentation, namely[ ] proof that at the time of the

11

misrepresentation, the defendant had the intention not to perform the act promised, and proof that the defendant had an intent to deceive.

*Alabama River Grp., Inc. v. Conecuh Timber, Inc.*, __ So. 3d __, 2017 WL 4324889, at *10 (Ala. Sept. 29, 2017) (citation, quotation marks, and alteration omitted). Finally, a claim of fraudulent suppression requires "(1) a duty on the part of the defendant to disclose facts; (2) concealment or nondisclosure of material facts by the defendant; (3) inducement of the plaintiff to act; (4) action by the plaintiff to his or her injury." *DGB, LLC v. Hinds*, 55 So. 3d 218, 231 (Ala. 2010) (quotation marks omitted).

Count Five, which sets out AAL Group's fraud claim, outlines the August 2016 meeting at which Mr. Sirbu met with Mr. Woolford, Mr. Daigle, and another AAL USA employee, Mr. Munger, to discuss the overdue payment from Northrop Grumman, and at which Mr. Woolford misrepresented that AAL USA had not paid AAL Group because Northrop Grumman had not yet paid AAL USA. The count further alleges that Mr. Woolford, "by words, conduct, and/or silence, represented and promised that AAL Group would be paid in full under the [other four contracts and the SES check]," and that AAL Group's funds would be used to pay Airbus and BIRD. (Doc. 182 at 18–19).

First, the court will address the part of the claim relating to the alleged theft of the Northrop Grumman funds. In this part of the claim, AAL Group alleges that AAL USA contracted to do work for Northrop Grumman, and entered a subcontract with AAL Group to perform some of its obligations under that contract. AAL Group performed its obligations, meaning that Northrop Grumman owed AAL USA money, and AAL USA in turn owed AAL Group money. But instead of demanding payment of the full debt from Northrop Grumman, AAL USA, at Mr. Woolford's direction, entered into a factoring agreement. Northrop Grumman paid the factoring company, which paid AAL USA a portion of the amount that Northrop

Grumman had owed AAL USA. But AAL USA never paid AAL Group; instead, Mr. Woolford and Mr. Daigle "spent the money in some other way," for "their personal gain and the use of [Black Hall Aerospace]." (Doc. 182 at 7–9).

In August 2016, AAL Group's CEO, Mr. Sirbu, met with Mr. Woolford, Mr. Daigle, and Mr. Munger to inquire about the overdue payments from Northrop Grumman. Mr. Woolford misrepresented to Mr. Sirbu that Northrop Grumman had not yet paid the amounts it owed to AAL USA. Mr. Sirbu instructed Mr. Munger to contact Northrop Grumman about the overdue payments, but after the meeting, Mr. Woolford told Mr. Munger that Northrop Grumman because it had, in fact, already paid its debt to AAL USA. (Doc. 182 at 8–9).

Mr. Woolford contends that AAL Group fails to plead the claim with particularity because the amended complaint does not state how AAL Group sustained damages based on the false statement or any omissions made during the August 2016 meeting. (Doc. 227 at 20). The court agrees. The amended complaint does not plead any *facts* showing how AAL Group relied on Mr. Woolford's misrepresentation, or how any such reliance damaged it. (*See* Doc. 182 at 18–20). All the amended complaint says is that "AAL Group reasonably relied on Daigle's and Woolford's misrepresentations and suppressions." But Rule 9(b) requires the plaintiff to plead "the manner in which [the misrepresentation or omission] misled the plaintiff, and . . . what the defendant[ ] obtained as a consequence of the fraud." *Mizzaro*, 544 F.3d at 1237. AAL Group has done neither of those things, and as a result, the court and Mr. Woolford are left to guess at how AAL Group relied on the purported misrepresentation and omission, and how the misrepresentation and omission proximately caused AAL Group damages.

AAL Group states in its brief that, had it known the truth, it would not have continued to do business with "Woolford or the entities that he was involved with." (Doc. 242 at 23). But

AAL Group's argument in a brief does not cure the insufficient conclusory nature of the allegations in its complaint. *See Gilmour v. Gates, McDonald & Co.*, 382 F.3d 1312, 1315 (11th Cir. 2004) ("A plaintiff may not amend [his] complaint through argument in a brief . . . ."). And in any event, AAL Group's argument in its brief continues to be conclusory; it does not identify the entities Mr. Woolford was involved with, or how its continued business with those entities harmed it. To the extent that AAL Group insinuates that it would have declined to perform its own obligations under its contracts with AAL USA, AAL Group does not explain how that would have prevented the nebulous harm it alleges.

Next, the court will address the other four contracts, the SES check, and the funds intended for Airbus and BIRD. The amended complaint's statement that Mr. Woolford's "words, conduct, and/or silence" amounted to a misrepresentation, promise, or omission as to those things is simply insufficient to satisfy Rule 9(b)'s requirement that a plaintiff plead a fraud claim with particularity. *McInteer*, 470 F.3d at 1357; *see also Mizzaro*, 544 F.3d at 1237 (requiring, among other things, the precise statements or omissions, the time and place of each statement or omission, "the content of such statements and the manner in which they misled the plaintiff," and "what the defendants obtained as a consequence of the fraud"). As a result, the court WILL DISMISS WITHOUT PREJUDICE the entirety of Count Five for failure to plead it with particularity.

    5.    <u>Conversion</u>

In Count Six, AAL Group raises a conversion claim, contending that Mr. Woolford "converted, misappropriated, and/or otherwise stole[ ] AAL Group's assets, including, without limitation, AAL Group's funds, prepayments, and the SES check." (Doc. 182 at 20). Mr. Woolford contends that the court must dismiss the conversion claim because (1) theft of

14

money cannot support a claim for conversion unless the money is specific and capable of identification; (2) a breach of contract cannot support a conversion claim; and (3) he cannot be held liable for Black Hall Aerospace's alleged theft of funds. (Doc. 227 at 21–23).

To prove a conversion claim under Alabama law, the plaintiff must establish "a wrongful taking or a wrongful detention or interference, or an illegal assumption of ownership, or an illegal use or misuse." *Ex parte Anderson*, 867 So. 2d 1125, 1129 (Ala. 2003). "Generally, an action will not lie for the conversion of money. However, if the money at issue is capable of identification, then a claim of conversion may be appropriate." *Greene Cty. Bd. of Educ. v. Bailey*, 586 So. 2d 893, 898 (Ala. 1991). A plaintiff may state a claim for conversion of money "only where there is an obligation to deliver the specific pieces of the money in question or money that has been specifically sequestered, rather than a mere obligation to deliver a certain sum." *SouthTrust Bank v. Donely*, 925 So. 2d 934, 940 (Ala. 2005) (quotation marks omitted).

To be capable of identification, money must be "traceable to a special account" or come from "segregated sources." *Id.* at 898–99 (footnote omitted). A check can constitute money capable of identification to support a conversion claim *if* the plaintiff has a "general or special property right or an immediate right of possession." *McCain v. P.A. Partners Ltd.*, 445 So. 2d 271, 272–73 (Ala. 1984); *Morgan v. Morgan*, 686 So. 2d 1239 (Ala. Civ. App. 1996) (permitting a claim that the defendant converted a check intended for the plaintiff). A drawee acquires a general or special property right in the check once the drawer has delivered it to the drawee. *McCain*, 445 So. 2d at 273.

AAL Group identifies several acts that it asserts state a claim for conversion: theft of the payments from Northrop Grumman; theft of deposits and advances that AAL Group made to

AAL USA; and theft of the SES check. (Doc. 242 at 24–25). The court concludes that AAL Group has stated a claim for conversion of the SES check, but not as to the other alleged thefts.

First, Mr. Woolford's alleged theft of the payments from Northrop Grumman cannot constitute conversion because the amended complaint contains no indication that AAL Group had an immediate right of possession in those funds. *See McCain*, 445 So. 2d at 272–73. Northrop Grumman had a contract with *AAL USA*, not AAL Group. As a result, the funds that Northrop Grumman paid to the factoring company, and that the factoring company paid to AAL USA, belonged to AAL USA, not AAL Group. AAL USA had a separate obligation, under its subcontract with AAL Group, to pay AAL Group for the work AAL Group did on AAL USA's behalf.

So, even assuming the funds Northrop Grumman paid to AAL USA were otherwise specifically identifiable, Mr. Woolford's theft of those funds would amount to conversion from *AAL USA*, not AAL Group. At the time that Mr. Woolford allegedly stole the funds from AAL USA, AAL Group had merely an "incorporeal right to a certain sum or to the collection of a debt" from AAL USA. *See McCain*, 445 So. 2d at 273 (rejecting a claim for conversion of an undelivered check because the plaintiff had only "an incorporeal right to a certain sum or to the collection of a debt").

Similarly, AAL Group cannot state a claim for conversion of the funds that AAL Group alleges it sent to AAL USA for payments to Airbus and BIRD. Once AAL Group sent those funds to AAL USA, it no longer had an immediate right of possession in them. As to the other four contracts, AAL Group does not allege that Mr. Woolford stole them before they became intermingled with AAL USA's other funds, or that AAL USA held the funds in a special account

or in some other way that makes them "traceable." *See Greene Cty. Bd. of Educ.*, 586 So. 2d at 898.

But the SES check presents a different matter. AAL Group alleges that SES issued a check to "AAL Group c/o AAL USA." It further alleges that "the Defendants," including Mr. Woolford, deposited the check and took the proceeds "for their own use." (Doc. 182 at 13). As such, the check and its proceeds are identifiable, and can support a claim of conversion. *See Pike v. Reed*, 47 So. 3d 253, 258 (Ala. Civ. App. 2009) ("Checks, and the property rights represented thereby, may be the subject of a conversion action.") (quoting *Alfa Mut. Ins. Co. v. Veal*, 622 So. 2d 1292 (Ala. 1993)).

Mr. Woolford argues that, even if the funds at issue are identifiable, AAL Group still failed to state a claim because (1) under Alabama law, breach of a contract cannot support a claim for conversion; and (2) he is not responsible for Black Hall Aerospace's theft of funds. Neither of those arguments holds water. The theft of the SES check has nothing to do with a breach of any contract, and AAL Group's amended complaint specifically alleges that Mr. Woolford himself—*along with* Mr. Daigle and Black Hall Aerospace—converted the SES check.

The court WILL NOT DISMISS Count Six to the extent it rests on the conversion of the SES check, but WILL DISMISS WITHOUT PREJUDICE the rest of Count Six.

6. <u>Tortious Interference</u>

In Count Seven, AAL Group asserts a tortious interference claim, alleging that AAL Group "had protectable business relationships, including, without limitation, business relationships with MAG, Airbus, BIRD, and SES." AAL Group alleges that Mr. Woolford, knowing of those relationships, intentionally interfered with them. (Doc. 182 at 20–21).

Mr. Woolford contends that the court must dismiss the tortious interference claim because AAL Group did not allege any actions taken by Mr. Woolford that damaged its contractual relations. (Doc. 227 at 23–24).

Under Alabama law, the elements of a tortious interference with a business relationship claim are "(1) the existence of a protectible business relationship; (2) of which the defendant knew; (3) to which the defendant was a stranger; (4) with which the defendant intentionally interfered; and (5) damage." *White Sands Group, L.L.C. v. PRSII, LLC*, 32 So. 3d 5, 14 (Ala. 2009).

AAL Group's amended complaint sets out business relationships between AAL Group and various contractors, but it provides no factual allegations showing what, if anything, Mr. Woolford *did* that constitutes interference in AAL Group's business relationships with those contractors. The conclusory allegation contained in Count Seven that "Woolford intentionally interfered with those relationships" does not suffice to cure the lack of factual allegations supporting the claim. *See Mamani*, 654 F.3d at 1153. As a result, the court WILL DISMISS WITHOUT PREJUDICE Count Seven.

7. Conspiracy

In Count Eight, AAL Group contends that "[b]y their actions described herein, [Black Hall Aerospace], Daigle, and Woolford conspired and combined to accomplish unlawful ends and/or to accomplish lawful ends by unlawful means." (Doc. 182 at 21). Mr. Woolford argues that the court must dismiss the conspiracy claim based on the intracorporate conspiracy doctrine. (Doc. 227 at 24–25).

The Alabama Supreme Court has adopted the intracorporate conspiracy doctrine from the Eleventh Circuit. *See M&F Bank v. First Am. Title Ins. Co.*, 144 So. 3d 222, 234 (Ala. 2013).

Under the intracorporate conspiracy doctrine, a corporation cannot conspire with its employees, and its employees cannot conspire with each other "when acting in the scope of their employment" because "the acts of a corporation's agents are considered to be those of a single legal actor." *McAndrew v. Lockheed Martin Corp.*, 206 F.3d 1031, 1036 (11th Cir. 2000) (en banc).

The court concludes that the intracorporate conspiracy doctrine bars a claim that Mr. Daigle, Mr. Woolford, and Black Hall Aerospace conspired to commit the wrongful acts that AAL Group alleges in its amended complaint. AAL Group alleges that Mr. Daigle and Mr. Woolford worked for Black Hall Aerospace, and engaged in a conspiracy *with it*. AAL Group retorts that the intracorporate conspiracy doctrine cannot bar its conspiracy claim because, for some period of time, Mr. Daigle and Mr. Woolford also worked for AAL USA. (Doc. 242). The fact that Mr. Daigle and Mr. Woolford may have worked for both AAL USA and Black Hall Aerospace while allegedly conspiring with Black Hall Aerospace does not defeat the intracorporate conspiracy bar. The court WILL DISMISS WITH PREJUDICE Count Eight.

### III. CONCLUSION

The court WILL GRANT IN PART AND DENY IN PART Mr. Woolford's motion to dismiss the amended complaint. The court WILL NOT DISMISS Count Two. The court WILL DISMISS WITHOUT PREJUDICE Counts Three, Four, Five, and Seven in their entirety. The court WILL NOT DISMISS the part of Count Six relating to the conversion of the SES check, but WILL DISMISS WITHOUT PREJUDICE the remainder of that count. The court WILL DISMISS WITH PREJUDICE the entirety of Count Eight.

The court will enter a separate order consistent with this opinion.

**DONE** and **ORDERED** this 10th day of July, 2018.

_____
**KARON OWEN BOWDRE**
CHIEF UNITED STATES DISTRICT JUDGE